STATE OF MINNESOTA *ex rel.* John Martin and others *vs.* SAMUEL H. CHUTE and others.

August 16, 1885.

**Corporation—Stockholders' Meeting—Valid Majority.**—At a valid stockholders' meeting, the charter and by-laws being silent on the subject, a majority of the votes cast, though but a minority of the stock represented, prevails. Those having an opportunity to vote, and not voting, are held to acquiesce in the result of the votes actually cast.

**Same—Failure to Offer Vote.**—Before one can complain that his vote was not taken, he must show that he offered to vote, or that he properly presented his claim of right to vote, and that it was excluded.

**Same—Right to Vote, how Determined.**—If the charter and by-laws prescribe no different rule, and the meeting appoint no tellers or inspectors for the purpose, it is for the meeting to determine, in the first instance, the right to vote. The president of the corporation or chairman of the meeting has no authority to pass upon it. One who, upon an adverse opinion expressed by that officer, refrains from offering his vote, and does not present his claim of right to the meeting for it to pass upon, cannot be heard afterwards to complain.

Upon the affidavit and application of the relators an order was made by this court, directed to the respondents, requiring them to show cause why leave should not be granted to the relators to file in this court an information in the nature of *quo warranto* against the respondents for intruding into and usurping the offices of directors of the Mississippi and Rum River Boom Company. The respondents answered, testimony was taken before a referee, and the matter was argued and submitted. Thereafter the following opinion was filed.

*Gilfillan, Belden & Willard* and *John M. Gilman,* for relators.

*J. M. Shaw* and *C. H. Benton,* for respondents.

GILFILLAN, C. J.[1] The only matter in issue is the validity of the election of respondents as directors of the Mississippi & Rum River Boom Company, at the annual meeting of stockholders, for the election of directors, on the first Tuesday in April, 1885. The relators

[1] Dickinson, J., was absent and took no part in this case.

claim it to have been invalid, because, as they assert, the right to vote upon the stock of Caleb D. Dorr was improperly excluded, whereby the election of the respondents was brought about, when, had that stock been allowed to vote, the relators, or the candidates favored by their party, would have been elected. There is some discrepancy in the evidence as to the details and order of events at the meeting, but as to the following facts the evidence is substantially agreed: That the stock of those constituting the relators' party, with that of Dorr, was a clear majority of the stock, and could, and had it been voted upon would, have elected their candidates; that Samuel H. Chute held a proxy from Dorr to vote upon his stock, and John Dudley held a subsequently-executed proxy from him to vote upon his stock, and also a revocation of the proxy to Chute—so that Dudley had the right to vote the Dorr stock. After the meeting convened, though at what precise point is not clear, but manifestly before the voting commenced, Dudley exhibited his proxy and the revocation to Chute, who, as president of the corporation, presided at the meeting, and the latter thereupon announced or asserted that neither of the proxies should vote upon the Dorr stock. After some excited protestation against this, the party of relators announced that they withdrew from the meeting, though they did not leave it, and then the vote was taken. Dudley did not make any further offer or claim to vote upon the Dorr stock, he and his party (that of relators) refraining from voting or offering to vote when the vote was taken. All the votes offered were cast for respondents; they were declared elected and the meeting adjourned.

At a valid meeting of stockholders, if no contrary rule is established by the charter or by-laws, a majority of those voting prevails. Those who have an opportunity to vote, and refrain, though they have a majority of the stock, must be held to acquiesce in the result of the votes actually cast. A stockholder, not voting, cannot get relief from the courts if he voluntarily refrained from voting, if he had an opportunity, and his claim of right to vote was not excluded. In this position stands Dudley, the representative of the Dorr stock, and those who acted with him. He did not offer to vote, nor properly present his claim of right to do so. There were no tellers or inspect-

ors appointed by the meeting to determine for it, even in the first instance, the right of any one offering to vote. We find nothing in the charter or by-laws, authorizing the president of the corporation, or chairman of the meeting, to determine such questions. The opinion expressed by Chute on Dudley's right to vote upon the Dorr stock was of no more effect or binding force than would have been a similar opinion expressed by any stockholder. No other provision being made, it was for the meeting, by a vote of the stockholders, to determine, until revised by the courts, the right claimed, and it was for Dudley to present the claim to the meeting, so that it might be passed upon. As nothing of the kind was done, he cannot claim that his right to vote was excluded, but must be taken to have voluntarily refrained from further action on Chute's adverse opinion alone. If anything could excuse him from presenting his claim as we have indicated, it could only be a case making it appear very clearly indeed that such action would be in vain. The evidence shows no such case. There were undoubtedly two parties, that of relators, and that of respondents, each desirous of electing its candidates, but there is no evidence from which it could be assumed that Chute expressed the opinion upon which the stockholders of respondents' party would act, nor any agreement or intention on their part to ignore Dorr's proxy to Dudley.

Judgment for respondents.